BENADAM PENDLETON v. W. R. GALBREATH et ux.

1. MARRIED WOMAN'S LAW — ACTS OF 1846 AND 1857 CONSIDERED AND COMPARED — UNDER LATTER, CERTAIN CONTRACTS OBLIGATORY. — In a suit on a promissory note given by a married woman, the owner of separate property, and her husband, in 1860, for money and supplies furnished in 1857 and 1858, "for the use and benefit of herself and family," a demurrer was improperly sustained to the declaration, because as to so much of the demands for which the note was given, as accrued since the Rev. Code of 1857 went into operation, she is liable.

ERROR to the circuit court of Adams county.   SMILEY, J.

The opinion of the court distinctly presents the features of this case.

*John D. Freeman*, for plaintiff in error.

As to the first ground of demurrer, this court has held that a married woman may give a note with her husband for her own use.   See Bowman. et ux. v. Thos. E. Helm, (manuscript).

Second cause is bad, because not true in fact.   The notes were given for supplies furnished the defendant for her separate use.   It does not appear that the debt was past due,

and, if not past due, all accounts may be closed *after due,* by note.

The third ground of demurrer is equally fallacious. The declaration shows that the wife had a separate estate, and that the notes were for that use, and the demurrer admits this to be true.

The statute provides that all contracts made by the wife, or by the husband with her consent, for family supplies, or necessaries, etc., shall be binding on her, and satisfaction may be had out of her separate property. Code 1857, p. 336, art. 25; Bowman et ux. v. Helm, before quoted.

The fourth ground, that the declaration is uncertain, is covered by the former agreement. Certainty to a common intent is all that is required. The notes and the allegations of the declaration are clearly within the meaning of the statute, and could only be showed by plea, showing a different state of case.

*W. T. Martin,* for defendants in error.

The question raised upon the record is, the liability of a married woman upon a promissory note made by her jointly with her husband.

The decision of the court below was, that such a contract was not binding upon the wife. A married woman's contract here, of any kind, must be binding, if at all, in a court of law, either because it is so by the common law, or because it is made so by the statutes.

At common law, as a general rule, a *"feme covert"* could do no act to bind herself, and her attempts to do this were not merely voidable but void *ab initio.* Tyler on Inf. and Cov. 315. 1 Pet. 338; Robertson v. Bruner, 24 Miss. 242. She could not at common law bind herself by a promissory note. 18 Md. 457; 15 Barb. 28; Clancey on Rights, 23.

And this was so even if living separate from her husband and having a maintenance. 8 Term, 545; 2 Bos. & Pul. 93; 3 East, 331.

She might even defeat a contract made by her in fraud. 39 Penn. 279; 4 Comp. 26; Tyler on Inf. and Cov. 316.

She could not at common law make a valid contract affecting either real or personal property.    6 Wend. 9, 13; 1 Taunt. 312; 2 Bright's Husband and Wife, 38, and authorities cited; Tyler, 317.

Even when a married woman bought necessaries at common law, the husband and not the wife is liable.    Her separate property could not be held for such necessaries.    2 Wright's Husband and Wife, 9; 33 Barb. 160, 164.

When a married woman holds separate property under a settlement or deed of trust, it is not necessary to cite authorities to show that, in order to bind the property, she must do so in the mode pointed out in the instrument creating her right to such property.

And when by statute she may contract so as to bind herself, she can do so only in the mode and to the extent prescribed by the enabling act.    Tyler on Inf. and Cov. 315, and authorities cited.    Robertson v. Bruner, 24 Miss. 242.

The act of the legislature of Mississippi, passed in 1839, did not confer the power of contracting or binding themselves or their property on married women.    Davis v. Foy, 7 Smedes & Marsh. 64; ib. 78; ib. 435; Robertson v. Bruner, 24 Miss. 242; ib. 416.    The act of February, 1846, declares what contracts might be made what would bind the wife, but the contracts sued on here are not alleged to be of the character provided for in that act, or in Rev. Code of 1857, in which the various acts of our legislature on the subject of the rights of married women are consolidated.    24 Miss. 242.

Unless by virtue of some act of the legislature, she is liable on the contract sued upon, and the declaration does not show that the contract is such as she might be held liable for, her separate estate could not be charged by a judgment at law, but could only be reached by resort to a court of equity.    Swett v. Penrice et al., 24 Miss. 416 and cases cited.

TARBELL, J.:

This suit is brought upon three several promissory notes of like amounts and dates, payable, however, at different periods. A copy of one will suffice for all, to wit:

"$1,281 38.                    NATCHEZ, *January* 10, 1860.

On the first of January next, we or either of us promise to pay B. Pendleton or order, the sum of twelve hundred and eighty-one dollars and thirty-eight cents, for value received, being for money and supplies furnised in 1857 and 1858, for the use and benefit of the first drawer and family, with interest at the rate of eight per cent per annum from date.

[Signed]                    .    E. Galbreath,
                                      W. R. Galbreath."

The declaration contains three counts, each upon one of these notes following in their averments; the language of the notes, viz.: that they were given for "money and supplies furnished in 1857 and 1858, for the use and benefit of the first drawer and family." The declaration also avers that, at the date of the execution of these notes, the defendant Elizabeth Galbreath was a married woman, the wife of her co-defendant, having at the time a separate property in her own right, "and that said three several promissory notes described and declared on above were executed and delivered for money and supplies furnished in 1857 and 1858, for the use and benefit of the first drawer, to wit, the said Elizabeth Galbreath, one of said defendants, under the statute regulating the rights of married women," yet, etc.

To this declaration a demurrer was filed, specifying as causes of demurrer: "1st. That said declaration alleges that said Elizabeth Galbreath was, at the time of making said notes, a married woman. 2d. That said declaration shows that the said notes were given for a debt past due. 3d. Said declaration does not show what separate property said

Elizabeth is or was possessed of, or by what title she holds the same. 4th. Said declaration is uncertain and informal."

The demurrer being sustained and the cause dismissed, the plaintiff brought his case to this court, the action of the court below, in sustaining the demurrer, being the only cause of error assigned.

Were this case determinable wholly, as it may be in part, by the law of February 28, 1846, Hutch. Code, p. 498, § 4, the demurrer could have been well taken.  Section 3 of the law of 1846 declares what property can be held by a married woman in her own right.  Section 4 prescribes the circumstances when, and mode of contracting, so as to bind her separate estate.  This statute has been construed by our predecessors.  Robertson et ux. v. Bruner, et al., 24 Miss. 242.  In that case the note was executed by a married woman alone, and the declaration averred that it was made and given "in and about business interest and concerns of her own, and by her exclusively managed."  The court declared the note a nullity, unless, in the language of the statute it was given "for the purchase of supplies for her plantation and slaves or for her slaves."

So much of section 4 of the act of February 28, 1846, as relates to the power of the wife to contract is as follows, viz. :  "And it shall be competent for her jointly with her husband to make any contract for the sale or hire of any such slaves, for their necessary clothing, maintenance, care and support, and for the employment of any agent or overseer, for their management and control; and all contracts for the purchase of supplies for the plantation and slaves, or for the slaves alone, owned by any married woman, made by the husband and wife or by either of them, either expressed or implied, shall be obligatory upon the husband and wife, and may be enforced against the proceeds and income of the separate property of such married woman."

The declaration and notes in the case at bar are for "money and supplies furnished in 1857 and 1858, for the use and benefit of the first drawer and family."

This language does not bring the case at bar within the law of 1846, and if the claims set forth in the declaration were wholly under this law the demurrer would be sustained.

But the demands sued on are partially, if not wholly, embraced by art. 25, p. 336, Rev. Code of 1857, which somewhat enlarges the rights and powers of married women. A portion of this article is as follows : "And all contracts made by the wife, or by the husband with her consent, for family supplies or necessaries," etc., "shall be binding on her, and satisfaction may be had out of her separate property," etc.

It would have been better to have made the averments of the declaration more full, even with reference to the present law, but all the questions necessary to the protection of the defendants can be raised on the trial, as the facts are developed. As to so much of the demands of plaintiff as accrued since the law of 1857 went into operation, we think the declaration substantially sufficient, though not as specific as desirable. The court below, however, possesses ample power, which it will use liberally, in the way of amendment.

The judgment is reversed and the cause remanded.